**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.H., E.H., and S.H.**

**No. 19-0713** (Monongalia County 17-JA-154, 17-JA-155, and 17-JA-156)

**MEMORANDUM DECISION**

Petitioner Mother G.S., by counsel Scott A. Shough, appeals the Circuit Court of Monongalia County's July 18, 2019, order terminating her parental rights to J.H., E.H., and S.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Frances C. Whiteman, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2017, the DHHR filed an abuse and neglect petition against petitioner that alleged she abused controlled substances, exposed the children to inappropriate individuals by virtue of her prostitution, and left them without proper supervision and care for extended periods, among other allegations. After petitioner waived her preliminary hearing, the circuit court granted her a preadjudicatory improvement period, during which she received supervised visitation with the children and participated in remedial services, including substance abuse treatment. Around this time, the children—then between the ages of eleven and fourteen—underwent interviews at

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

the local Child Advocate Center, during which they expressed concerns about petitioner's ability to provide them with necessary food and supervision, her substance abuse, and issues regarding sexual misconduct by an older sibling who was an adult at the time of the petition's filing. The children also expressed that they did not enjoy visits with petitioner, did not want to continue visits, and did not trust that petitioner's conduct would not regress. Shortly after the interviews, the DHHR terminated petitioner's visits with the children and filed an amended petition that included more specific allegations against petitioner based on the children's disclosures.

In November of 2018, petitioner stipulated to allegations from the amended petition, including that she had a substance abuse problem that negatively affected her ability to parent the children and failed to provide them with necessary food and supervision. Thereafter, the circuit court granted petitioner a post-adjudicatory improvement period. During this improvement period, it was agreed that petitioner would begin therapeutic parenting sessions and that the children would be introduced into those sessions as recommended by their therapists. Additionally, around this time, petitioner indicated that she had moved approximately two hours away into the home of her boyfriend.

During a review hearing in April of 2019, it was reported that the children, after continuing to undergo individual therapy, remained unwilling to visit petitioner. Additionally, the children's therapists recommended that the children not be forced to join petitioner's therapy sessions. In May of 2019, the circuit court held a hearing on petitioner's motion for a post-dispositional improvement period, during which it was established that petitioner continued to reside with her boyfriend in a home that could not accommodate all the children. Further, the children's therapists indicated that they did not believe reunification with petitioner was in the children's best interests, given their express fear of having contact with petitioner. As such, the circuit court denied petitioner's motion.

In June of 2019, the circuit court conducted a dispositional hearing, during which the children's respective therapists testified and indicated that sixteen-year-old J.H. continued to express "anger . . . and fear" regarding petitioner's conduct and did not wish to return to her custody; that fourteen-year-old E.H. suffered from post-traumatic stress disorder as a result of petitioner's conduct, would "curl[] up on the floor . . . in a fetal position" when faced with discussions of petitioner's conduct, and did not wish to be returned to her care; and that twelve-year-old S.H. expressed "fear and mistrust" regarding petitioner's conduct and did not wish to be returned to her care. Petitioner testified to her compliance with services and asked that the court impose a dispositional alternative less drastic than termination of her parental rights. The circuit court found, however, that petitioner had "not remediated the conditions that led to the filing of the [p]etition," which conditions were "extreme, to the point where the children had to steal to eat, were fearful of living with [petitioner], and one of the children [was] diagnosed with PTSD due to the trauma experienced" with petitioner. Further, the circuit court found that petitioner's "behavior . . . repeatedly and seriously injured her children emotionally, to the point that resources of therapy ha[d] not been able to resolve the issues and may not be able to resolve the issues in the near future." Given that the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that the children's

welfare required it, the circuit court ordered the termination of petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in denying her motion for a post-dispositional improvement period because she maintained employment, participated in substance abuse treatment, and submitted to therapy. In short, petitioner asserts that both the guardian and the DHHR believed that she was doing everything necessary to remedy the conditions of abuse and neglect, which required the granting of an additional improvement period. What petitioner fails to acknowledge, however, is that she failed to satisfy the applicable burden to obtain an improvement period.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a post-dispositional improvement period when,

[s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that *since the initial improvement period, the [parent] has experienced a substantial change in circumstances*. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

---

[2]The children's father is deceased. According to the parties, the permanency plan for the children is adoption in the current foster home.

3

(Emphasis added). Petitioner cites to nothing in the record to show that she satisfied this burden. On the contrary, the record shows that petitioner's position between the granting of her earlier two improvement periods and her request for the third improvement period remained relatively unchanged, with the exception that she was better complying with services by that time. However, petitioner fails to recognize the impact of her actions on the children and how her conduct was detrimental to their welfare, which impacted the circuit court's decision to deny the motion.

As outlined above, the children suffered severe emotional trauma as a result of petitioner's conduct. Given the impact on the children and their stated fear of seeing petitioner, visits with the children were terminated early in the proceedings and the children were not required to participate in her therapy sessions because they were unprepared to confront the issue of petitioner's conduct. Despite the cautionary approach of the circuit court and the parties, as recommended by various experts, petitioner nonetheless defied the circuit court's order and initiated inappropriate contact with the children at a social event. During this incident, petitioner "educated" the children about the possible termination of her parental rights, expressed that she wanted the children "to give [her] another chance," and told them that if they wanted to be reunified with her that they "need to be telling someone." When questioned as to why she would contact the children despite a strict prohibition, petitioner testified that she "never did understand . . . why all contact was cut off with my kids." Petitioner's admitted disregard of the court's order and the recommendations of experts about the impact of contact with petitioner on the children illustrates that denial of an improvement period was appropriate, given that she clearly failed to appreciate the deeply traumatizing effect of her actions. Further, on appeal to this Court, petitioner continues to minimize the effects of her conduct on the children by asserting that the children were motivated to express their desire to not see her by their placement "in a very affluent household" with resources "in stark contrast" to petitioner's. According to petitioner, the children's foster placement allowed them to "go on vacations" and enjoy "living that was unimaginable when they resided" with her. Not only is there no evidence in the record to support that the children were motivated to request that they not see petitioner by the lifestyle they were afforded in foster care, the record demonstrates that it was the extreme conditions petitioner exposed them to—and the trauma they experienced as a result—that caused them to be fearful and distrustful of petitioner. Based on this evidence, we find that the circuit court did not err in denying petitioner a post-dispositional improvement period, especially given the granting of two prior improvement periods that did not result in the correction of the conditions alleged in the petition.

Next, petitioner argues that the circuit court erred in terminating her parental rights instead of imposing a less-restrictive dispositional alternative. In support, petitioner asserts that her compliance with services and ability to "achieve[] and maintain[] sobriety," in addition to her maintenance of employment and housing, necessitated a disposition less than termination of her parental rights. However, petitioner's arguments on appeal again attempt to minimize her conduct and its impact on the children. According to petitioner, "[s]he participated in parenting and adult life skills education even though it was arguably something she had little need for and something she was qualified to teach others." Given that petitioner stipulated to the failure to properly care for the children, and the fact that the children indicated that they had to steal food in order to eat while in petitioner's care, such arguments can only support a finding that petitioner failed to fully acknowledge the conditions of abuse and neglect that necessitated the children's removal. Similarly, as noted above, petitioner failed to understand why she was not permitted to see her

4

children, despite evidence that even discussing petitioner's conduct caused one child to enter into a fetal position on his therapist's floor. In short, petitioner's arguments that she may continue to improve if granted a less-restrictive dispositional alternative such that she could regain custody of the children ring hollow, given that "[f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect . . . , results in making the problem untreatable . . . ." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013). Further, as more fully set forth below, the circuit court made the requisite findings upon which to base termination and these findings were based on substantial evidence. Accordingly, the decision not to impose a less-restrictive dispositional alternative was not in error.

Finally, we find no error in the termination of petitioner's parental rights. According to West Virginia Code § 49-4-604(b)(6), a circuit court may terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Here, the circuit court found that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect, in part, because her "behavior . . . repeatedly and seriously injured her children emotionally, to the point that resources of therapy ha[d] not been able to resolve the issues and may not be able to resolve the issues in the near future." On appeal, petitioner attacks the children's therapy as ineffective and argues that "the failure of the boys' therapy to progress to the point where supervised visits and additional reunification steps could occur was not the result of her actions." Petitioner further argues that the children's therapists never told them that petitioner admitted to abusing and/or neglecting them and that they all failed to "guid[e] therapy toward reunification issues." We note, however, that the therapists all indicated that pushing the children toward reunification was not in their best interests and that such discussions surrounding reunification would need to occur at the children's own pace, given the trauma they all endured. Further, regardless of whether the children were told that petitioner stipulated to allegations contained in the petition, the fact remains that petitioner continued to believe that her actions were not detrimental to the children and that they only expressed fear of her because they enjoyed their placement in foster care.

Indeed, on appeal petitioner again asserts that the "discrepancies in lifestyle" afforded by the children's foster placement is the sole reason they expressed any fear or mistrust of her and indicated that they did not want to visit her, let alone be returned to her care. We reiterate that this argument has no support in the record and is based only on petitioner's unsubstantiated assertions. As such, any argument that the guardian or DHHR failed to investigate whether the children were motivated to express these wishes because of their placement in foster care is without merit. Moreover, this argument again illustrates petitioner's failure to appreciate the impact of her conduct on the children, which renders the problem untreatable. Her continued refusal to accept the impact of her conduct also supports the circuit court's finding that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect. *See* W. Va. Code § 49-4-604(c) (defining "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as meaning that "the abusing adult [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help"). Further, given the extensive evidence from the children's therapists about the impact of reunification on the children, coupled with their stated desire not to be returned to petitioner's care, it is clear that termination of petitioner's parental rights was necessary for the children's welfare. While petitioner may be

correct that she was able to achieve a high level of compliance and remediation of certain issues, she fails to recognize that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Here, the children's best interests necessitated termination of petitioner's parental rights.

We additionally find no merit to petitioner's argument that termination was erroneous because "[g]iven their ages, adoption was not necessary to establish . . . permanency" for the children. While recognizing the children's advanced ages, we nonetheless note that this Court has routinely held that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court *shall give priority to securing a suitable adoptive home for the child* and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Petitioner's argument that the children should be denied the stability of adoption so that she can pursue speculative improvement only underscores the appropriateness of the termination of her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 18, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison